# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

| | | |
|---|---|---|
| D-1 | ALI ABDUL KARIM FARHAT | |
| | a/k/a Allen Farhat, | |
| D-2 | ABDULAMIR BERRO | |
| | a/k/a Abe Berro, a/k/a "Abed" | |
| D-3 | HASSAN ABDUL KARIM FARHAT, | |
| D-4 | AKRAM ABDUL KARIM BERRO, | |
| D-5 | JAMAL SAADALLAH BERRO, | |
| D-7 | ABDUL HALIM BERRO | |
| D-8 | BILAL EL-SABLANI, | |
| D-9 | NOURA BERRO, | |
| D-10 | SAMI AHMAD BERRO, | |
| D-11 | ZEINAB BERRO, | |
| D-12 | SADEK BERRO | |
| | a/k/a Sam Berro, | |
| D-13 | AMIRA ALI FARHAT | |
| D-14 | ABDUL KARIM AKRAM BERRO, | |
| D-15 | HOUDA MOHAMAD BERRO, | |
| D-16 | LINA REDA | |
| | a/k/a LINA BERRO | |
| D-17 | ALMIRE ALI-SADEK BERRO, | |
| D-18 | NASSIB SAADALLAH BERRO, | |
| D-19 | SALWA NASSIB BERRO | |

        Defendants.

CRIMINAL NO. 04-80370

HON. JOHN CORBETT O'MEARA

VIOLATIONS:

18 U.S.C. § 157: BANKRUPTCY FRAUD

18 U.S.C. § 371: CONSPIRACY

18 U.S.C. § 1001: FALSE STATEMENTS

18 U.S.C. § 1341: MAIL FRAUD

18 U.S.C. § 1344: BANK FRAUD

18 U.S.C. § 1349: BANK FRAUD CONSPIRACY

18 U.S.C. § 1956: MONEY LAUNDERING

18 U.S.C. § 1957: MONEY LAUNDERING

18 U.S.C. § 1962 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

18 U.S.C. § 2: AIDING AND ABETTING

/

# SECOND SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

**PART I:**          **INTRODUCTION**

### The Scheme

1.     From in or about March 1999 through on or about April 2004, in the Eastern District of Michigan, Southern Division, and elsewhere, various defendants, together with others known and unknown to the grand jury, devised and intended to devise a scheme and artifice to defraud numerous banks, credit card companies, creditors, merchant service providers, mortgage lenders and bankruptcy trustees, and to obtain money and property by means of false and fraudulent pretenses, representations and promises ("the scheme").

2.     To execute the scheme, many of the defendants processed or caused to be processed numerous credit card transactions at companies owned by the defendants as well as other establishments knowing and intending that the banks and credit card companies would not be paid for those transactions.  In executing the scheme, these defendants employed a strategy to maximize the amount of cash and merchandise obtained from their credit cards.  As part of the scheme, some of the defendants declared bankruptcy so that creditors could not collect the amounts owed.  Various defendants also used bank accounts of third parties, transferred title to property in sham transactions, including to wives and adult children, and laundered money to conceal assets from creditors and bankruptcy trustees.

## Plan And Purposes Of The Scheme

3.     The plan and purpose of the scheme was for the defendants (a) to "bust out" credit cards, as described in paragraphs eight through ten of this Count, and otherwise incur charges without payment and thereby obtain cash and merchandise; (b) to evade collection efforts by creditors by declaring bankruptcy; (c) to transfer and otherwise hide assets, property and the proceeds of their fraudulent activity from creditors and bankruptcy trustees.

## Manner And Means Of The Scheme

The manner and means by which the defendants sought to accomplish the plan and purposes of the scheme included, among others, the following:

4.     The defendants possessed numerous credit cards and used various means to create the appearance of credit worthiness, such as inflating annual income on the credit card applications and submitting monthly payments over a period of time in order to maintain good credit standing.

5.     The defendants in some instances aided each other in making monthly payments to establish or maintain the appearance of credit worthiness.  In some such cases, credit card charges were processed at companies owned by the defendants and those defendants, receiving cash for the charges, would then make monthly payments on the credit cards of the account holder.

6. The defendants also made monthly payments from proceeds of home refinancing loans, fraudulently obtained, to maintain the credit cards in good standing until the time of the bust out.

7. Although the defendants would sometimes charge credit cards to or above the maximum limit and leave the balances unpaid, typically, the defendants employed a strategy to maximize the amount of free merchandise or cash obtainable from credit cards.

8. That strategy – sometimes referred to as a "bust out"-- began with charging the credit card to or near the credit limit. Once the balance on the credit card was at its limit, the defendants knowingly submitted a bogus payment – a worthless check, electronic or other form of payment – to the credit card company which appeared to significantly reduce or eliminate the amount owing on the card balance, thereby fraudulently inflating the credit available on the card.

9. The defendants used the United States mail or commercial carriers when they sent non-sufficient funds checks falsely representing payments on credit cards to the credit issuing companies.

10. Before the credit card company became aware of the worthless nature of the payment, the defendants and others made charges and aided one another in making charges at companies owned by the defendants and other establishments, usually up to or over the limit of the fraudulently inflated balance, knowing the credit card holder would

never pay for these charges. In this way, the defendants succeeded in obtaining cash and merchandise worth twice the credit limit of the credit card.

11.     The defendants repeatedly used their credit cards at businesses owned by other defendants. When charges were processed at companies owned by the defendants, the defendants usually received either cash, rather than merchandise as in a legitimate credit card transaction with a merchant, or merchandise that they would then sell at significant profit and no cost since no payment was made to the credit card company for the purchase.

12.     When charges were processed at companies owned by the defendants, the credit card company would transfer funds to those companies, usually through a merchant service provider, in the amount of the charges to the credit cards. In return for processing the bogus charges at their companies, the defendant company owners would keep a portion of the money fraudulently obtained from the credit card companies.

13.     The bogus payments made by the defendants on the credit cards were ultimately declined for insufficient funds and the defendants made no further payments on the credit cards.

14.     The defendants then took deliberate steps to evade collection efforts by declaring bankruptcy so that creditors could not attach assets or otherwise collect on the amounts owed to them. In addition, the defendants concealed and transferred assets, and aided one another in concealing and transferring assets, in contemplation of bankruptcy

so creditors could not attach those assets. For the same reasons, the defendants concealed the extent of their assets, property and the proceeds of fraudulent activity in their bankruptcy proceedings. As a result, their creditors suffered significant losses from unpaid and uncollectible debts.

**PART II:        GENERAL ALLEGATIONS**

At all times pertinent to this Indictment:

15.     ALI FARHAT owned and operated Sigma Distribution Inc. (hereinafter "SIGMA"), a Michigan corporation, located in Dearborn, Michigan, which was a distributor of fragrances and cosmetics.

16.     ABDULAMIR BERRO owned or operated Byblous Distribution Investment, Inc. (hereinafter "BDI"), a Michigan corporation, located in Dearborn, Michigan, which also operated under the names "BDI," "BDI Wholesale," and "Budget Tele-Com," and was a cigarette wholesale business.

17.     At various times, businesses closely associated with BDI were created. They included Berro Enterprises, L.L.C., Smoker City Stop Inc. and Tobacco Outlet Stop Inc.

18.     At various times, SIGMA and BDI had arrangements with merchant service providers who provided SIGMA and BDI with the capability of accepting credit cards and who transmitted funds via wire transfer from bank accounts outside the State of

Michigan to bank accounts of SIGMA and BDI located in Michigan on behalf of the credit card issuers for credit card transactions processed at SIGMA and BDI.

19.     Advanta Bank Corp., Associated Bank, Associates National Bank, Bank of America, Bank One, Capital One Bank, Chase Bank, Citibank, Columbus Bank and Trust, Direct Merchants Bank, Discover Bank, First USA Bank, N.A., Fleet Boston Financial Corp., The Huntington National Bank, Household Bank, Household Credit Services, N.A., JP Morgan Chase Bank, MBNA America Bank, National City Bank, People's State Bank, Retailer's National Bank, Southport Bank, Standard Federal Bank, Wachovia Bank, N.A., and World Savings Bank are all financial institutions as defined by Title 31, United States Code, Section 5312(a)(2), whose deposits are insured by the Federal Deposit Insurance Corporation.

20.     ABN AMRO Mortgage Group, Inc. is an affiliate of Standard Federal Bank.

21.     All dates in this indictment are alleged to be "on or about" the specific date stated.

**PART III:**      **RACKETEERING CONSPIRACY**

## COUNT ONE
### (18 U.S.C. § 1962(d) – RACKETEERING CONSPIRACY)

**D-1**  **ALI ABDUL KARIM FARHAT**
      a/k/a Allen Farhat,
**D-2**  **ABDULAMIR BERRO**
      a/k/a Abe Berro, a/k/a "Abed,"
**D-12**  **SADEK BERRO**
      a/k/a Sam Berro

1.     Paragraphs 1 through 14 of the Introduction to this Indictment and paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

### THE ENTERPRISE

2.     Defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO, and the legal entities SIGMA and BDI, and others known and unknown to the grand jury, constituted an enterprise as that term is defined in Title 18, United States Code, Section 1961(4), namely, a group of individuals and legal entities associated in fact, which engaged in and the activities of which affected interstate commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## PURPOSES OF THE ENTERPRISE

3.   The purposes of the enterprise included the following:

A.   defrauding banks, merchant service providers and credit card issuers through fraudulent schemes in order to obtain money and property;

B.   receiving, holding and distributing money received during the course of and as a result of fraudulent schemes;

C.   disguising and concealing the defendants' interest in and control over the money;

D.   concealing assets from creditors;

E.   enriching the members of the enterprise and others, both in the United States and Lebanon.

4.   The roles of the defendants in the enterprise were as follows:

A.   ALI FARHAT was the President and owner of SIGMA and a leader of the enterprise in his role as a collusive merchant for the defendants and others in the bust out of numerous credit cards.  ALI FARHAT processed credit card transactions for defendants and others through SIGMA, which on paper appeared legitimate, but which, in fact, were not intended to be paid by the account holder.  Relying on the integrity of the transaction at SIGMA, the credit company, through a merchant service provider, paid ALI FARHAT the amount of money (less a fee) that had been charged on the

credit card at SIGMA. ALI FARHAT retained a percentage of that money for himself and gave the rest to the account holder who had made the bogus charge. The victim credit card company was never paid for the charges at SIGMA.

ALI FARHAT also solicited individuals and otherwise offered to process credit cards at SIGMA for cash, knowing that the charges would not be paid by the account holder. In addition, ALI FARHAT instructed individuals on how to bust out credit cards, provided advice about defrauding credit card companies and other creditors, and assisted in concealing assets so creditors could not attach them for payment.

B.  ABDULAMIR BERRO was the brother-in-law of ALI FARHAT. ABDULAMIR BERRO was also the President and owner of BDI and its related companies and a leader in the enterprise in his role as a collusive merchant for defendants and others in the bust out of numerous credit cards. ABDULAMIR BERRO processed credit card transactions for defendants and others through BDI which on paper appeared legitimate, but which, in fact, were not intended to be paid by the account holder. Relying on the integrity of the transaction at BDI and its related companies, the credit company, through a merchant service provider, paid ABDULAMIR BERRO the amount of money (less a fee) that had been charged on the

credit card at BDI and its related companies. ABDULAMIR BERRO retained a percentage of that money for himself and gave the rest to the account holder who had made the bogus charge. In some instances, ABDULAMIR BERRO would provide merchandise to the account holder who would then resell the merchandise at significant profit and at no cost since the credit card charge would never be paid. In either case, the victim credit card company was never paid for the charges at BDI.

ABDULAMIR BERRO also solicited individuals and otherwise offered to process credit cards at BDI for cash, knowing that the charges would not be paid by the account holder. In addition, ABDULAMIR BERRO instructed individuals on how to bust out credit cards and provided advice about defrauding credit card companies and other creditors and assisted in concealing assets so creditors could not attach them for payment.

C.    SADEK BERRO was the brother of defendant ABDULAMIR BERRO and brother-in-law of defendant ALI FARHAT. Defendant SADEK BERRO was a close associate of both defendants ALI FARHAT and ABDULAMIR BERRO in the scheme. Defendant SADEK BERRO's responsibilities included, but were not limited to, making payments on the credit cards of defendants in order to keep them in good standing before the time of the defendants' bust out. Defendant SADEK BERRO also used and caused

credit cards of defendants and others to be used for the benefit of defendants ALI FARHAT and ABDULAMIR BERRO and their companies. Defendant SADEK BERRO also recruited defendants to bust out their cards at SIGMA and BDI. Further, he taught defendants how to bust out their credit cards and how to file for bankruptcy in order to evade creditors and assisted in concealing assets so creditors could not attach them for payment.

## THE RACKETEERING CONSPIRACY

5.     From approximately March 1999 through approximately April 2004, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants ALI FARHAT, ABDULAMIR BERRO, and SADEK BERRO, being persons employed by and associated with the enterprise described above in paragraphs 2 through 4 of Count One, which enterprise was engaged in, and the activities of which affected, interstate commerce, did knowingly and intentionally conspire and agree with each other and with persons known and unknown to the grand jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5).

6. The pattern of racketeering activity consisted of multiple acts indictable under the following laws of the United States:

A. Title 18, United States Code, Section 1344 (Bank Fraud);

B. Title 18, United States Code, Section 1343 (Wire Fraud);

C. Title 18, United States Code, Section 1956 (Money Laundering);

D. Title 18, United States Code, Section 1957 (Money Laundering).

7. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## MANNER AND MEANS OF THE CONSPIRACY

8. Among the manner and means by which the defendants conducted and participated in the affairs of the enterprise, and accomplished and attempted to accomplish the objectives of the conspiracy, were the following:

## THE SCHEME

9. The defendants devised and intended to devise the scheme as set forth in paragraphs 1 through 14 of the Introduction to this Indictment.

10. Defendants ALI FARHAT, ABDULAMIR BERRO and SADEK BERRO together with others known and unknown to the grand jury processed and caused to be processed credit card transactions at SIGMA, BDI and other establishments and fraudulently obtained money and merchandise, including tobacco inventory for defendant

ABDULAMIR BERRO and BDI, through those credit card transactions, knowing that payment would not be made for the transactions. Defendants ALI FARHAT, ABDULAMIR BERRO and SADEK BERRO fraudulently caused funds to be deposited via wire transfers from bank accounts held by merchant service providers to bank accounts of SIGMA and BDI as reimbursement for the credit card transactions occurring at SIGMA and BDI. Defendant ALI FARHAT caused fake invoices to be transmitted via facsimile to SIGMA's merchant service provider purporting to substantiate credit card transactions that had been processed at SIGMA. Defendants ALI FARHAT, ABDULAMIR BERRO and SADEK BERRRO fraudulent concealed and assisted others known and unknown to the grand jury in concealing assets and funds from creditors and bankruptcy trustees and conducted financial transactions designed to conceal the nature and source of the proceeds of their fraudulent activity.

11. Defendants ABDULAMIR BERRO and SADEK BERRO, together with Zeinab Berro (not named as a defendant in this Count) made or caused to be made charges at BDI and other establishments on credit cards of defendant SADEK BERRO and his wife, Zeinab Berro, and fraudulently obtained money and merchandise, including tobacco inventory for defendant ABDULAMIR BERRO and BDI, through these credit card transactions, knowing that defendant SADEK BERRO and Zeinab Berro did not intend to make payments for those transactions.

12.     Defendants ALI FARHAT and ABDULAMIR BERRO assisted defendant SADEK BERRO in concealing his true ownership of property and of funds in contemplation of the filing by SADEK BERRO and Zeinab Berro of bankruptcy and in order to avoid any application of assets and funds to offset his and Zeinab Berro's debts to creditors in bankruptcy.

13.     Defendants ALI FARHAT, ABDULAMIR BERRO, together with Akram Berro and Jamal Berro (not named as defendants in this Count) made or caused to be made charges at SIGMA, BDI and other establishments on credit cards in the names of Akram Berro and his wife, Jamal Berro, and fraudulently obtained money and merchandise, including tobacco inventory for defendant ABDULAMIR BERRO and BDI, through these credit card transactions, knowing that Akram Berro and Jamal Berro did not intend to make payments for those transactions.

14.     Defendant ABDULAMIR BERRO assisted Akram Berro and Jamal Berro in concealing their interest in the residence at 7510 Appoline, Dearborn, through the selling of that property to their son, Abdul Karim Berro (not named as a defendant in this Count), and then laundered the $128,000 Akram and Jamal Berro received in that sale in order to conceal their true ownership of those funds.

15. Defendant ALI FARHAT assisted Akram Berro and Jamal Berro in fraudulently concealing their true ownership in the property at 25800 Labana Woods, Taylor, through the purchase of that property with his wife, Amira Farhat (not named as a defendant in this Count), who acted as a nominee buyer.

16. At the direction of ALI FARHAT, Hassan Farhat (not named as a defendant in this Count), the brother of defendant ALI FARHAT and an employee at SIGMA, processed fraudulent credit card transactions at SIGMA for cash.

17. Defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO, together with Sami Berro and his wife, Noura Berro (not named as a defendant in this Count), made or caused to be made charges at SIGMA, BDI and other establishments on credit cards in the name of defendant NOURA BERRO, and fraudulently obtained money and merchandise through these credit card transactions, knowing that defendant NOURA BERRO did not intend to make payments for those transactions.

18. Defendant SADEK BERRO assisted Noura Berro in her bankruptcy filing and proceedings in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, which Noura Berro initiated so that credit card companies and other creditors could not collect payment.

19. With defendant ALI FARHAT's approval, Sami Berro (not named as a defendant in this count) arranged for other individuals to process credit card transactions at SIGMA for cash.

20.     Defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO, together with Nassib Berro (not named as a defendant in this Count) and his wife, Salwa Berro (not named as a defendant in this count) made or caused to be made charges at SIGMA, BDI and other establishments on credit cards in the name of Salwa Berro and fraudulently obtained money and merchandise through those credit card transactions, knowing that Salwa Berro did not intend to make payments for those transactions.

21.     Defendant SADEK BERRO assisted Nassib Berro and Salwa Berro in their bankruptcy filing and proceedings in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, which Nassib Berro and Salwa Berro initiated so that credit card companies and other creditors could not collect payment

22.     Defendant ABDULAMIR BERRO and Abdul Halim Berro (not named as a defendant in this Count) made or caused to be made charges at BDI and other establishments on credit cards in the name of Abdul Halim Berro and fraudulently obtained money and merchandise through these credit card transactions, knowing that defendant Abdul Halim Berro did not intend to make payments for those transactions.

23.     Defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO and Bilal El-Siblani (not named as a defendant in this Count) made or caused to be made charges at BDI and other establishments on credit cards in the name of Bilal El-Siblani and fraudulently obtained money and merchandise through these credit card transactions,

knowing that Bilal El-Siblani did not intend to make payments for those transactions.

24. Defendant SADEK BERRO assisted Bilal El-Siblani in this fraudulent activity by making payments on credit cards held by Bilal El-Siblani.

25. All in violation of Title 18, United States Code, Section 1962(d).


**PART IV:**      **BANK FRAUD AND BANKRUPTCY FRAUD COUNTS**
**(Counts 2 through 34)**

**COUNTS TWO THROUGH TWENTY-EIGHT**
**(18 U.S.C. §§ 1344, 2 – BANK FRAUD,**
**AIDING AND ABETTING)**


D-1    **ALI ABDUL KARIM FARHAT**
        **a/k/a Allen Farhat,**
D-2    **ABDULAMIR BERRO**
        **a/k/a Abe Berro, a/k/a "Abed",**
D-4    **AKRAM ABDUL KARIM BERRO,**
D-5    **JAMAL SAADALLAH BERRO,**
D-7    **ABDUL HALIM BERRO**
D-8    **BILAL EL-SABLANI,**
D-9    **NOURA BERRO,**
D-10   **SAMI AHMAD BERRO,**
D-11   **ZEINAB BERRO,**
D-12   **SADEK BERRO**
        **a/k/a Sam Berro**
D-18   **NASSIB BERRO**
D-19   **SALWA BERRO**

1. Paragraphs 1 through 14 of the Introduction to this Indictment and paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2. From on or about March 1999 to on or about April 2004 in the Eastern

District of Michigan, Southern Division, defendants ALI FARHAT, ABDULAMIR BERRO, AKRAM BERRO, JAMAL BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, SAMI AHMAD BERRO, ZEINAB BERRO, SADEK BERRO, NASSIB BERRO and SALWA BERRO devised and executed, and aided and abetted each other and others known and unknown to the grand jury in devising and executing, a scheme to defraud financial institutions and to obtain credits, moneys and other property owned by, or in the custody or control of, federally insured financial institutions by means of materially false and fraudulent pretenses, representations and promises.

3.     The defendants devised and intended to devise the scheme as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, to fraudulently obtain money and property from financial institutions through credit card transactions knowing that no payment would be made for those transactions.

4.     As part of the scheme, defendants used credit cards or caused others to use credit cards at BDI and SIGMA and at other establishments, with the assistance of ALI FARHAT, ABDULAMIR BERRO and SADEK BERRO, and then knowingly submitted or caused to be submitted non-sufficient funds checks and other forms of bogus payments to financial institutions falsely representing them as payments on credit card balances in order to defraud those financial institutions and to fraudulently obtain credit from them.

5. Each of the following constitutes a separate count of this Indictment:

| Ct. | Defendant | Financial Institution | Credit Card Account Number | Location of Unpaid Charges | Date Insufficient Funds Posted To Account As Credit | Amount of Insufficient Funds Check |
|---|---|---|---|---|---|---|
| 2 | Zeinab Berro | Peoples Bank | 5416-5100-0479-6764 | At Martin & Snyder for BDI | 03/23/01 | $9,800.00 |
| 3 | Zeinab Berro | Citibank | 5424-1800-7964-4354 | At Martin & Snyder for BDI | 04/05/01 | $12,600.00 |
| 4 | Sadek Berro | Bank of America | 5414-4131-0035-6637 | Cash Advances | 05/16/00 | $6,500.00 |
| 5 | Sadek Berro | Citibank | 5410-6540-4737-4118 | Cash Advances | 05/17/00 | $7,000.00 |
| 6 | Sadek Berro | Direct Merchants Bank | 5458-0040-1912-6125 | BDI | 05/21/01 | $800.00 |
| 7 | Noura Berro | Discover | 6011-3003-2800-1654 | BDI | 02/02/01 | $6,000.00 |
| 8 | Noura Berro | MBNA America | 5329-0005-9480-8852 | BDI | 02/05/01 | $4,000.00 |
| 9 | Noura Berro | First National Bank | 4418-0290-0095-9319 | BDI | 02/05/01 | $6,000.00 |
| 10 | Bilal El-Sablani | MBNA | 4264-2904-5264-4073 | BDI | 02/08/01 | $5,000.00 |
| 11 | Bilal El-Sablani | Citibank | 4128-0032-1308-2392 | BDI | 02/08/01 | $4,600.00 |
| 12 | Bilal El-Sablani | Peoples Bank | 4388-3201-0841-4208 | BDI | 02/13/01 | $7,500.00 |
| 13 | Nassib Berro | Huntington National Bank | 5422-2830-1007-8567 | Jewelry Store | 07/16/99 07/19/99 | $3,000.00 $2,700.00 |

| 14 | Nassib Berro | Capitol One | 5291-0715-0899-8463 | Miscellan-eous Locations | 07/16/99 07/23/99 | $500.00 $450.00 |
|----|----|----|----|----|----|----|
| 15 | Salwa Berro | Direct Merchant's Bank | 5458-0005-7900-2334 | BDI | 11/21/01 | $2,412.00 |
| 16 | Akram Berro | First USA Bank | 4085-6700-0076-8283 | Sigma; Martin & Snyder for BDI | 12/20/01 | $8,000.00 |
| 17 | Akram Berro | National City Bank Visa | 4311-9660-1406-2838 | Sigma; Budget Telecom; Martin & Snyder for BDI | 12/27/01 | $5,500.00 |
| 18 | Akram Berro | The Edvance Card | 4305-5006-0202-7719 | Sigma; Martin & Snyder for BDI | 12/27/01 | $9,000.00 |
| 19 | Akram Berro | Citibank Platinum Visa | 5424-1805-2684-2684 | Martin & Snyder for BDI | 12/27/01 | $4,000.00 |
| 20 | Jamal Berro | Citibank Associates National Bank | 4018-0401-8064-4716 | Sigma | 12/21/01 | $3,000.00 |
| 21 | Jamal Berro | Citibank Associates Gold Mastercard | 5418-8703-7023-4826 | Appliance & Electrical Stores | 12/21/01 | $5,000.00 |
| 22 | Jamal Berro | First National Bank of Omaha | 4418-0290-0118-1731 | Sigma; BDI; Martin & Snyder for BDI | 12/21/01 | $6,400.00 |
| 23 | Abdul Halim Berro | Discover | 6011-0057-0062-0688 | Sam's Club & elsewhere | 06/16/02 | $14,250.00 |
| 24 | Abdul Halim Berro | People's Bank | 4017-3500-0215-7222 | BDI | 06/24/02 | $7,500.00 |

| 25. | Abdul Halim Berro | People's Bank | 5466-7470-0152-5635 | BDI | 06/24/02 | $5,450.00 |
|---|---|---|---|---|---|---|
| 26 | Abdul Halim Berro | Citibank | 4128-0039-8457-1953 | BDI | 06/12/02 | $8,550.00 |
| 27 | Abdul Halim Berro | National City | 4311-9660-1300-3130/4311-9660-1739-5268 | BDI | 06/23/02 | $6,750.00 |
| 28 | Abdul Halim Berro | Capital One-Kmart | 5397-0020-6550-7218 | BDI | 06/23/02 | $9,750.00 |

6.    All in violation of Title 18, United States Code, Sections 1344 and 2.


## COUNTS TWENTY-NINE THROUGH THIRTY-FOUR
(18 U.S.C. §§ 157(1), 2 – BANKRUPTCY FRAUD, AIDING AND ABETTING)

D-4    AKRAM ABDUL KARIM BERRO,
D-5    JAMAL SAADALLAH BERRO,
D-7    ABDUL HALIM BERRO,
D-8    BILAL EL-SABLANI,
D-9    NOURA BERRO,
D-11   ZEINAB BERRO,
D-12   SADEK BERRO
       a/k/a Sam Berro,
D-18   NASSIB BERRO
D-19   SALWA BERRO

1.    Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2. From approximately March 1999 to April 2004, in the Eastern District of Michigan, Southern Division and elsewhere, defendants, AKRAM BERRO, JAMAL BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, ZEINAB BERRO, SADEK BERRO, NASSIB BERRO and SALWA BERRO knowingly devised and executed, and aided and abetted each other and others known and unknown to the grand jury, in devising and executing, a scheme and artifice to defraud numerous issuers of credit cards as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, hereby incorporated into this count.

3. In order to execute the scheme and artifice to defraud creditors and in order to evade collection efforts by those creditors for their credit card debts, defendants, AKRAM BERRO, JAMAL BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, ZEINAB BERRO, SADEK BERRO, NASSIB BERRO and SALWA BERRO on the dates noted below, signed and filed in United States Bankruptcy Court for the Eastern District of Michigan petitions under Title 11 of the United States Code, the Bankruptcy Code, claiming the approximate amounts noted below in debt, including credit card debt. Each filing noted below constitutes a separate count of this Indictment.

| Ct. | Defendant | Date of Bankruptcy Petition Filing | Total Bankruptcy Amount | Number of Credit Cards on Bankruptcy Petition | Approximate Amount of Credit Card Debt | Claimed Assets |
|---|---|---|---|---|---|---|
| 29 | Zeinab Berro Sadek Berro | 08/29/01 | $554,878.34 | 37 | $280,000.00 | $208,700.00 |
| 30 | Noura Berro | 09/19/01 | $124,549.77 | 15 | $98,199.00 | $2,500.00 |

| 31 | Bilal El-Sablani | 12/18/01 | $489,174.25 | 23 | $240,000.00 | $22,300.00 |
|---|---|---|---|---|---|---|
| 32 | Nassib Berro Salwa Berro | 04/25/02 | $468,301.09 | 71 | $430,000.00 | $5,350.00 |
| 33 | Akram Berro Jamal Berro | 05/23/02 | $521,657.09 | 76 | $440,000.00 | $8,676.00 |
| 34 | Abdul Halim Berro | 02/11/03 | $421,120.00 | 40 | $325,000.00 | $1,000.00 |

4.    All in violation of Title 18 United States Code, Sections 157(1) and 2.


## PART V: THE SADEK BERRO AND ZEINAB BERRO FRAUD ACTIVITY AND MONEY LAUNDERING
### (Counts 35 through 36)

### COUNT THIRTY-FIVE
### (18 U.S.C. § 371 – CONSPIRACY)

D-1   ALI ABDUL KARIM FARHAT
      a/k/a Allen Farhat,
D-2   ABDULAMIR BERRO
      a/k/a Abe Berro, a/k/a "Abed,"
D-11  ZEINAB BERRO,
D-12  SADEK BERRO
      a/k/a Sam Berro

1.    Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.      Between May 2000 and September 2001, in the Eastern District of
Michigan, Southern Division, defendants ALI FARHAT, ABDULAMIR BERRO,
SADEK BERRO and ZEINAB BERRO did knowingly combine, conspire and agree with
each other and persons known and unknown to the grand jury:

A.      to violate Title 18, United States Code, Section 1344 (Bank Fraud), by
        knowingly executing and attempting to execute a scheme and artifice to
        defraud financial institutions, as set forth in paragraphs 1 through 14 of the
        Introduction to this Indictment and to obtain money, funds, or other
        property owned by, or in the custody or control of, federally insured
        financial institutions by means of materially false and fraudulent pretenses,
        representations and promises;

B.      to violate Title 18, United States Code, Section 1341 (Mail Fraud ) by
        knowingly placing and causing to be placed in an authorized depository for
        mail, for delivery by the United States Postal Service and private or
        commercial interstate mail carriers, non-sufficient funds checks
        representing payments on credit cards, for the purpose of executing and in
        furtherance of the scheme and artifice to defraud, as set forth in paragraphs
        1 through 14 of the Introduction to this Indictment, and to obtain money or
        property by means of materially false and fraudulent pretenses,
        representations and promises.

## OBJECTS OF THE CONSPIRACY

3.    The defendants conspired and agreed with each other and others known and unknown to the grand jury a) to defraud financial institutions and other credit card issuers by busting out credit card accounts and otherwise incurring charges without making payments; b) to obtain cash and merchandise by using credit cards at BDI and other establishments for which payment was never made; c) to evade collection efforts by creditors by declaring bankruptcy; and d) to conceal assets and the proceeds of their fraudulent activity in order to evade creditors and avoid detection.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the dates set out below, one or more of the defendants performed and caused to be performed overt acts, including but not limited to the following, in the Eastern District of Michigan, Southern Division, and elsewhere:

### Citibank, account no. 5424-1800-7964-4354

4.    On April 5, 2001, the defendants mailed or caused to be mailed non-sufficient funds check no. 392 in the amount of $12,600.00 as payment on the Citibank account of ZEINAB BERRO, account number 5424-1800-7964-4354.

5. On April 16, 2001, defendants ABDULAMIR BERRO and SADEK BERRO caused a transaction in the amount of $9,500 to be processed at Martin & Snyder, a cigarette wholesaler, on ZEINAB BERRO's Citibank account for the purchase of tobacco products for ABDULAMIR BERRO's business, BDI.

## Purchase of 7749 West Morrow, Dearborn

6. From June 15, 2001 through August 31, 2001, defendant SADEK BERRO, with the assistance of defendants ALI FARHAT and ABDULAMIR BERRO, participated in a transaction to purchase a residence located at 7749 West Morrow, Dearborn, Michigan in the name of defendant SADEK BERRO's son, Almire Berro (not named as a defendant in this Count).

7. On June 14, 2001, defendant ALI FARHAT, at defendant SADEK BERRO's request, provided $12,399 as part of the down payment for the property as a "gift" on June 14, 2001.

8. On June 14, 2001, defendant ABDULAMIR BERRO provided $27,400 as part of the down payment as a "gift" on June 14, 2001. Defendant SADEK BERRO had previously deposited that approximate amount into a BDI account held by ABDULAMIR BERRO.

## Bankruptcy Filing

9.     On August 29, 2001, defendants SADEK BERRO and ZEINAB BERRO jointly filed or caused to be filed a voluntary petition for bankruptcy, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

10.     Defendant SADEK BERRO failed to disclose in connection with their bankruptcy case that he had an interest in the real property located at 7749 West Morrow, Dearborn, Michigan.

11.     All in violation of Title 18, United States Code, Sections 371.

## COUNT THIRTY-SIX
## (18 U.S.C. § 1956(h) - CONSPIRACY TO LAUNDER MONEY)

**D-2    ABDULAMIR BERRO**
        a/k/a Abe Berro, a/k/a "Abed"
**D-12   SADEK BERRO**
        a/k/a Sam Berro

1.     Paragraphs 1 through 14 of the Introduction to this Indictment and paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.     From March 31, 2001 to June 15, 2001, in the Eastern District of Michigan, Southern Division, defendants ABDULAMIR BERRO and SADEK BERRO did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury to conduct a financial transaction, knowing the funds involved were proceeds derived from some form of unlawful activity, and in fact involved proceeds of

bankruptcy fraud, 18 U.S.C. § 152, a specified unlawful activity within the meaning of Title 18, United States Code, Section 1956(c)(7), knowing that the transaction was designed, in whole or part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the above specified unlawful activity.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants ABDULAMIR BERRO and SADEK BERRO performed or caused to be performed the following overt actions, among others:

3. From March 31, 2001 through June 14, 2001, defendant ABDULAMIR BERRO deposited funds into BDI's Bank One account, number 362435504, in the form of checks made payable to defendant SADEK BERRO that had been issued by insurance companies.

4. On June 15, 2001, defendant ABDULAMIR BERRO withdrew funds from BDI's Bank One account, number 362435504, in the form of an official check, number 262274629, in the amount of $27,400 and made payable to defendant ALMIRE BERRO, defendant SADEK BERRO's son.

5. All in violation of Title 18, United States Code, Section 1956(h).

## PART VI: THE AKRAM BERRO AND JAMAL BERRO FRAUD ACTIVITY AND MONEY LAUNDERING
### (Counts 37 through 39)

### COUNT THIRTY-SEVEN
### (18 U.S.C. § 371 – CONSPIRACY)

D-1  **ALI ABDUL KARIM FARHAT**
  a/k/a Allen Farhat,
D-2  **ABDULAMIR BERRO**
  a/k/a Abe Berro, a/k/a "Abed,"
D-4  **AKRAM ABDUL KARIM BERRO,**
D-5  **JAMAL SAADALLAH BERRO,**
D-12 **SADEK BERRO**
  a/k/a/ Sam Berro

1.    Paragraphs 1 through 14 of the Introduction to this Indictment and paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.    From December 2000 until November 2002, in the Eastern District of Michigan, Southern Division, defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO, AKRAM BERRO, and his wife, defendant JAMAL BERRO, did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury:

A.    to violate Title 18, United States Code, Section 1344 (Bank Fraud), by knowingly executing and attempting to execute a scheme and artifice to defraud financial institutions, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment and to obtain money, funds, or other property owned by, or in the custody or control of, federally insured

financial institutions by means of materially false and fraudulent pretenses, representations and promises;

B.    to violate Title 18, United States Code, Section 1341 (Mail Fraud) by knowingly placing and causing to be placed in an authorized depository for mail, for delivery by the United States Postal Service and private or commercial interstate mail carriers, non-sufficient funds checks representing payments on credit cards, for the purpose of executing and in furtherance of the scheme and artifice to defraud, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, and to obtain money or property by means of materially false and fraudulent pretenses, representations and promises.

## OBJECTS OF THE CONSPIRACY

3.    The defendants conspired and agreed with each other and others known and unknown to the grand jury a) to defraud financial institutions and other credit card issuers by busting out credit card accounts and otherwise incurring charges without making payments; b) to obtain cash and merchandise by using credit cards at SIGMA, BDI and other establishments for which payment was never made; c) to evade collection efforts by creditors by declaring bankruptcy; and d) to conceal assets and the proceeds of their fraudulent activity in order to evade creditors and avoid detection.

# OVERT ACTS

4.    In furtherance of the conspiracy and to accomplish its objects, on or about the dates set out below, one or more of the defendants performed and caused to be performed overt acts, including but not limited to the following, in the Eastern District of Michigan and elsewhere:

5.    In a telephone conversation on September 8, 2001, defendant AKRAM BERRO asked defendant ABDULAMIR BERRO to process a credit card transaction for $2,000 cash for defendant AKRAM BERRO to bring to Lebanon.

## First USA Bank, account no. 4085-6700-0076-8283

6.    On November 17, 2001, a credit card transaction on the First USA Bank credit card of defendant AKRAM BERRO was processed at Martin & Snyder on the account and for the benefit of BDI.

7.    On December 20, 2001, defendant AKRAM BERRO made or caused a payment to be made by non-sufficient funds check 2023 to First USA Bank in the amount of $8,000 falsely representing it as payment on the account.

8.    On December 21, 2001, a credit card transaction on defendant AKRAM BERRO's First USA Bank credit card in the amount of $6,940 was processed at defendant ALI FARHAT's company, SIGMA.

9.    On December 20, 2000, a credit card transaction was processed at BDI in the amount of $4,700 on the Citibank Associates National Bank credit card of JAMAL BERRO, account number 4018-0401-8064-4716.

10.    Between March 7, 2001 and September 22, 2001, ABDULAMIR BERRO mailed and caused to be mailed to Citibank Associates checks representing monthly payments on JAMAL BERRO's Citibank credit card account.

11.    On December 21, 2001, JAMAL SAADALLAH BERRO mailed and caused to be mailed a non-sufficient funds check in the amount of $3,000 falsely representing it as payment on the account.

12.    On December 22, 2001, a credit card charge in the amount of $2,800 was processed at SIGMA, ALI FARHAT's company.

**7510 Appoline, Dearborn, Michigan**

13.    On February 15, 2002, defendants AKRAM BERRO and JAMAL BERRO transferred title to their residence at 7510 Appoline, Dearborn, Michigan, to their son, Abdul Karim Berro (not named a defendant in this Count) in a sale of the property to him.

14.    In his mortgage loan application, Abdul Karim Berro falsely represented that he earned $3,900 from BDI, defendant ABDULAMIR BERRO's company.

15.    At the time of the "sale" of the 7510 Appoline residence to their son,

defendants AKRAM BERRO and JAMAL BERRO failed to disclose in closing affidavits and elsewhere that there was a lien on that residence held by ABN AMRO Mortage Group, Inc.

16. On February 15, 2002, defendants AKRAM BERRO and JAMAL BERRO received $128,094 in a check issued by the Title Company of Michigan.

17. On the same date, February 15, 2002, defendants AKRAM BERRO and JAMAL BERRO caused a certified check to issue to ABDULAMIR BERRO's company, Berro Enterprises, in the amount of $128, 089.37.

### Bankruptcy Filing

18. On May 23, 2002, defendants AKRAM BERRO and JAMAL BERRO jointly filed or caused to be filed a voluntary petition for bankruptcy, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

19. Defendants AKRAM BERRO and JAMAL BERRO failed to disclose in connection with their bankruptcy case that they had received $128,000 in proceeds from the sale of their residence at 7510 Appoline, Dearborn, Michigan in April 2002.

20. From October 2002 through November 2002, while the bankruptcy petition of defendants AKRAM BERRO and JAMAL BERRO was pending, defendant ALI FARHAT participated and assisted in the purchase of property located at 25800 Labana Woods, Taylor, Michigan, in which the wife of ALI FARHAT, AMIRA ALI FARHAT,

was a nominee buyer and fraudulently concealed that defendants AKRAM BERRO and

JAMAL BERRO were the true owners of the property.

21.    All in violation of Title 18, United States Code, Sections 371.

## COUNT THIRTY-EIGHT
### (18 U.S.C. § 1956(h)- CONSPIRACY TO LAUNDER MONEY)

**D-2    ABDULAMIR BERRO**
       **a/k/a Abe Berro, a/k/a "Abed"**
**D-4    AKRAM ABDUL KARIM BERRO**
**D-5    JAMAL SAADALLAH BERRO**

1.    Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.    From February 15, 2002 to May 14, 2002, in the Eastern District of

Michigan, Southern Division, defendants ABDULAMIR BERRO, AKRAM BERRO and

JAMAL BERRO did knowingly combine, conspire and agree with each other and persons

known and unknown to the grand jury to conduct a financial transaction, knowing the

funds involved were proceeds derived from some form of unlawful activity, and which in

fact involved proceeds of bank fraud, a specified unlawful activity within the meaning of

Title 18, United States Code, Section 1956 (c)(7), with the intent to promote specified

unlawful activities, namely bank fraud (18 U.S.C. § 1344) and bankruptcy fraud (18

U.S.C. § 152) and knowing that the transaction was designed, in whole or part, to conceal

and disguise the nature, the location, the source, the ownership, and the control of the

proceeds of the specified unlawful activity.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants

ABDULAMIR BERRO, AKRAM BERRO and JAMAL BERRO performed or caused to

be performed the following overt actions, among others:

3.      On February 15, 2002, AKRAM BERRO and JAMAL BERRO used

proceeds of a bank fraud associated with their sale of 7510 Appoline, Dearborn, Michigan

to purchase an official check, number 0052703, in the amount of $128,089.37 at Fifth

Third Bank payable to Berro Enterprises, representing proceeds of bank fraud.

4.      On February 15, 2002, ABDULAMIR BERRO deposited that official check

into the Bank One account, number 175001965821, of Berro Enterprises.

5.      On February 21, 2002, ABDULAMIR BERRO withdrew funds from the

Berro Enterprise Bank One account in the form of an official check in the amount of

$84,000 made payable to Metropolitan Title for the purchase of 22640 Kelly Road and

18700 Nine Mile Road, Eastpointe, Michigan.

6.      On February 28, 2002, ABDULAMIR BERRO transferred $70,000 from

the Berro Enterprises Bank One account to Berro Enterprises Fifth Third account.

7.      From February 28, 2002 through May 7, 2002, defendant ABDULAMIR

BERRO and AKRAM ABDUL KARIM BERRO engaged in a number of financial

transactions whereby ABDULAMIR BERRO withdrew from the Berro Enterprises Fifth

Third account approximately $48,000 in the form of checks made payable to AKRAM

ABDUL KARIM BERRO.

8.     From May 10, 2002 to May 14, 2002, ABDULAMIR BERRO withdrew

funds from the Berro Enterprises Fifth Third account in the form of checks for expenses

associated with establishing a business, A & S Oil, for and on behalf of AKRAM

ABDUL KARIM BERRO.

9.     All in violation of Title 18, United States Code, Section 1956(h).


## COUNT THIRTY-NINE
### (18 U.S.C. § 1349- CONSPIRACY TO COMMIT BANK FRAUD)

**D-1    ALI ABDUL KARIM FARHAT**
**        a/k/a Allen Farhat,**
**D-2    ABDULAMIR BERRO**
**        a/k/a Abe Berro, a/k/a "Abed,"**
**D-4    AKRAM ABDUL KARIM BERRO,**
**D-5    JAMAL SAADALLAH BERRO,**
**D-13   AMIRA ALI FARHAT**

1.     Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.     From approximately October 2002 to March 8, 2005, in the Eastern District

of Michigan, Southern Division and elsewhere, defendants ALI FARHAT,

ABDULAMIR BERRO, AKRAM BERRO, JAMAL BERRO, and AMIRA ALI

FARHAT, did knowingly combine, conspire and agree with each other and persons

known and unknown to violate Title 18, United States Code, Section 1344, Bank Fraud,

by knowingly executing and attempting to execute a scheme and artifice to obtain money, funds, or other property owned by, or in the custody or control of, federally insured financial institutions by means of materially false and fraudulent pretenses, representations and promises.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects defendants ALI FARHAT, ABDULAMIR BERRO, AKRAM BERRO, JAMAL BERRO, and AMIRA FARHAT performed or caused to be performed the following overt actions, among others:

3.     On October 14, 2002, defendant AMIRA FARHAT made false representations in a mortgage loan application for the purchase of 25800 Labana Woods, Taylor, regarding her use of that property as her primary residence, when, in fact, she was acting as a nominee buyer for defendants AKRAM BERRO and JAMAL BERRO.

4.     In October 2002, defendant AKRAM BERRO participated in the negotiations for the purchase of the residence located at 25800 Labana Woods, Taylor, Michigan.

5.     On or about November 7, 2002, defendant ABDULAMIR BERRO caused official checks to issue made payable to defendant AMIRA FARHAT for a total approximate amount of  $23,000 for the purchase of the property.

6.     On November 12, 2002, World Savings Bank issued a mortgage loan for

$197,250 to defendants AMIRA FARHAT and ALI FARHAT based on information in the loan application, including false information relating to defendant AMIRA FARHAT's employment at and income from SIGMA.

7.     All in violation of Title 18, United States Code, Section 1349.


## PART VII:  THE HASSAN FARHAT FRAUD ACTIVITY

### COUNT FORTY
### (18 U.S.C. § 371 – CONSPIRACY)

**D-1   ALI ABDUL KARIM FARHAT**
        **a/k/a Allen Farhat,**
**D-3   HASSAN ABDUL KARIM FARHAT**

1.     Paragraphs 1 through 14 of the Introduction to this Indictment and paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.     From January 17, 2001, until January 2004, in the Eastern District of Michigan, Southern Division, defendants    ALI FARHAT and HASSAN FARHAT did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury:

A.     to violate Title 18, United States Code, Section 1344 (Bank Fraud), by knowingly executing and attempting to execute a scheme and artifice to defraud financial institutions, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment and to obtain money, funds, or other property

owned by, or in the custody or control of, federally insured financial institutions by means of materially false and fraudulent pretenses, representations and promises;

B.    to violate Title 18, United States Code, Section 1343 (Wire Fraud) by knowingly executing and attempting to execute a scheme to defraud, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, and to obtain money or property by means of materially false and fraudulent representations, and for the purposes of executing the scheme, causing the interstate wire transmission of writings, signs, signals and sounds.

## OBJECTS OF THE CONSPIRACY

3.    The defendants conspired and agreed with each other and others known and unknown to the grand jury (a) to defraud financial institutions and other credit card issuers by processing fraudulent credit card transactions; and (b) to conceal the fraudulent transactions.

## OVERT ACTS

4.    In furtherance of the conspiracy and to accomplish its objects, on or about the dates set out below, one or more of the defendants performed and caused to be performed overt acts, including but not limited to the following, in the Eastern District of Michigan and elsewhere:

5. On February 4, 2002, a false invoice was created showing purchases of fragrance products totaling $7,450 by Hussein Berro at SIGMA, and listing the "REP" as "HF." The invoice was created to make fraudulent credit card transactions appear to be legitimate.

6. On September 27, 2002, ALI FARHAT, HASSAN FARHAT and another individual discussed processing a $5,000 charge on the American Express card of the card holder at SIGMA, without the knowledge of the card holder, to obtain cash to satisfy a debt owed by the card holder to ALI FARHAT.

7. On December 15, 2003, at the direction of ALI FARHAT, HASSAN FARHAT caused a $250 transaction to be processed at SIGMA's perfume counter at the Gibralter Trade Center on the Aspire Visa credit card of an individual known to the grand jury, kept $20, and gave $230 to the individual.

8. All in violation of Title 18, United States Code, Section 371.

PART VIII:     THE SAMI BERRO, NOURA BERRO AND LINA BERRO
               FRAUD ACTIVITY
               (Counts 41 and 42)


                        COUNT FORTY-ONE
                   (18 U.S.C. § 371 – CONSPIRACY)

D-1   ALI ABDUL KARIM FARHAT
      a/k/a Allen Farhat,
D-2   ABDULAMIR BERRO
      a/k/a Abe Berro, a/k/a "Abed,"
D-9   NOURA BERRO,
D-10  SAMI AHMAD BERRO


        1.     Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

        2.     From August 1999 until October 2002, in the Eastern District of

Michigan, Southern Division, defendants ALI FARHAT, ABDULAMIR BERRO,

NOURA BERRO and SAMI BERRO did knowingly combine, conspire and agree with

each other and persons known and unknown to the grand jury:

        A.     to violate Title 18, United States Code, Section 1344 (Bank Fraud), by

               knowingly executing and attempting to execute a scheme and artifice to

               defraud financial institutions, as set forth in paragraphs 1 through 14 of the

               Introduction to this Indictment and to obtain money, funds, or other

               property owned by, or in the custody or control of, federally insured

financial institutions by means of material false and fraudulent pretenses, representations and promises;

B.    to violate Title 18, United States Code, Section 1341 (Mail Fraud ) by knowingly placing and causing to be placed in an authorized depository for mail, for delivery by the United States Postal Service and private or commercial interstate mail carriers, non-sufficient funds checks representing payments on credit cards, for the purpose of executing and in furtherance of the scheme and artifice to defraud, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, and to obtain money or property by means of materially false and fraudulent pretenses, representations and promises.

## OBJECTS OF THE CONSPIRACY

3.    The defendants conspired and agreed with each other and others known and unknown to the grand jury a) to defraud financial institutions and other credit card issuers by busting out credit card accounts and otherwise incurring charges without making payments; b) to obtain cash and merchandise by using credit cards at SIGMA, BDI and other establishments for which payment was never made; c) to evade collection efforts by creditors by declaring bankruptcy; and d) to conceal assets and the proceeds of their fraudulent activity in order to evade creditors and avoid detection.

## OVERT ACTS

In furtherance of the conspiracy and to effect its objects, the defendants, and others known and unknown to the grand jury, performed overt acts, including, but not limited to the following:

4.     In a telephone conversation on April 3, 2001, defendant SAMI BERRO requested that defendant ALI FARHAT process a credit card transaction on the American Express card of a third party for cash.

### First National Bank, account no. 4418-0290-0095-9319

5.     On November 22, 1999, a transaction in the amount of $2,950 was processed at BDI on NOURA BERRO's First National Bank credit card account, number 4418-0290-0095-9319.

6.     On May 13, 2000, a Western Union money order issued from the account of defendant SAMI BERRO in the amount of $294.00 was mailed to First National Bank as payment on the credit card.

7.     On February 1, 2001, a transaction in the amount of $1,791 was processed at BDI on defendant NOURA BERRO's First National Bank credit card.

8.     On February 5, 2001, defendant NOURA BERRO  mailed or caused to be mailed non-sufficient funds check number 629 in the amount of $6,000 to First National Bank falsely representing it as payment on the account.

## Bankruptcy Filing

9.     On September 19, 2001, NOURA BERRO filed a voluntary petition for

bankruptcy on September 19, 2001, under Chapter 7 of Title 11, United States Code, in

United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

10.     In that bankruptcy petition, defendant NOURA BERRO stated that she held

no interest in real property when, in fact, defendant NOURA BERRO had an interest in

the real property located at 6479 Hartwell, Dearborn, Michigan.

11.     On October 18, 2001, defendant SADEK BERRO drove defendant

NOURA BERRO to the to attend a hearing on her bankruptcy filing.

12.     On October 18, 2001, defendant SADEK BERRO attended the bankruptcy

hearing of defendant NOURA BERRO before a U.S. Bankruptcy Trustee at the United

States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

13.     All in violation of Title 18, United States Code, Sections 371.


### COUNT FORTY-TWO
### (18 U.S.C. §§ 1001, 2 - FALSE STATEMENTS,
### AIDING AND ABETTING)

**D-10  SAMI AHMAD BERRO**
**D-16  LINA REDA**
            **a/k/a/ LINA BERRO**

1. On or about October 11, 2002, in the Eastern District of Michigan, Southern

Division, defendants SAMI AHMAD BERRO and LINA REDA did knowingly and

willfully make, and aid and abet in making, false, fictitious, and fraudulent materially

statements and representations in a matter within the jurisdiction of the United States

Department of Housing and Urban Development, a department of the executive branch of

the government of the United States, in that in a Uniform Residential Loan Application

for a Federal Housing Administration-insured loan for the purchase of property located at

6479 Hartwell, Dearborn, Michigan, defendant LINA REDA a/k/a/ LINA BERRO stated

that she earned a monthly income of $5,277.37 working at a Subway restaurant, 8001

Gratiot Avenue, Detroit, Michigan, knowing the same to be false.

2.      All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

PART IX:          THE NASSIB BERRO AND SALWA BERRO
                  FRAUD ACTIVITY
                  (Count 43)

COUNT FORTY-THREE
(18 U.S.C. § 371 – CONSPIRACY)

D-1     ALI ABDUL KARIM FARHAT
        a/k/a Allen Farhat,
D-2     ABDULAMIR BERRO
        a/k/a Abe Berro, a/k/a "Abed,"
D-12    SADEK BERRO
        a/k/a Sam Berro
D-18    NASSIB BERRO,
D-19    SALWA BERRO,

1.      Paragraphs 1 through 14 of the Introduction to this Indictment and

paragraphs 15 through 21 of the General Allegations are incorporated in this Count.

2.      From June 1999 until April 2002, in the Eastern District of Michigan,

Southern Division, defendants ALI FARHAT, ABDULAMIR BERRO, SADEK BERRO, NASSIB BERRO and SALWA BERRO did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury:

A.    to violate Title 18, United States Code, Section 1344 (Bank Fraud), by knowingly executing and attempting to execute a scheme and artifice to defraud financial institutions, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment and to obtain money, funds, or other property owned by, or in the custody or control of, federally insured financial institutions by means of material false and fraudulent pretenses, representations and promises;

B.    to violate Title 18, United States Code, Section 1341 (Mail Fraud ) by knowingly placing and causing to be placed in an authorized depository for mail, for delivery by the United States Postal Service and private or commercial interstate mail carriers, non-sufficient funds checks representing payments on credit cards, for the purpose of executing and in furtherance of the scheme and artifice to defraud, as set forth in paragraphs 1 through 14 of the Introduction to this Indictment, and to obtain money or property by means of materially false and fraudulent pretenses, representations and promises.

## OBJECTS OF THE CONSPIRACY

3.    The defendants conspired and agreed with each other and others known and unknown to the grand jury a) to defraud financial institutions and other credit card issuers by busting out credit card accounts and otherwise incurring charges without making payment; b) to obtain cash and merchandise by using credit cards at BDI and other establishments for which payment was never made; c) to evade collection efforts by creditors by declaring bankruptcy; and d) to conceal assets and the proceeds of their fraudulent activity in order to evade creditors and avoid detection.

## OVERT ACTS

In furtherance of the conspiracy and to effect its objects, the defendants, and others known and unknown to the grand jury, performed overt acts, including, but not limited to the following:

4.    In a telephone conversation on June 12, 2001, defendant NASSIB BERRO offered defendant ALI FARHAT his credit cards to process transactions on them for $10,000 cash.

**American Express Card
account no. 3783-480958-71007**

5.    On June 1, 1999, a transaction in the amount of $7,208.00 was processed at Palisades Jewelers on defendant NASSIB BERRO's American Express credit card account, number 3783-480958-71007.

6. On July 28, 1999, defendant NASSIB BERRO mailed or caused to be mailed a non-sufficient funds check in the amount of $25,400.00 to American Express falsely representing it as payment on the credit card.

### Bank of America Card, account no. 4024-1150-1135-2119

7. On November 26, 2001, a transaction in the amount of $1,100 was processed at BDI on defendant SALWA BERRO's Bank of America credit card, account number 4024-1150-1135-2119.

8. On December 12, 2000, defendant SALWA BERRO mailed or caused to be mailed non-sufficient funds check number 1403 in the amount of $2,000, falsely representing it as payment on her Bank of American credit card.

9. On December 22, 2001, a transaction in the amount of $1,700 was processed at BDI on defendant SALWA BERRO's Bank of America credit card.

### Direct Merchants Bank, account no. 5458-0005-7501-9373

10. On November 21, 2001, defendant SALWA BERRO caused a fraudulent payment in the amount of $2,260 to be made on her Direct Merchants Bank credit card, account number 5458-0005-7501-9373.

11. On November 23, 2001, a transaction in the amount of $1,989 was processed at SIGMA on defendant SALWA BERRO's Direct Merchants Bank credit card.

## Sale of 5903 Steadman Before Bankruptcy Filing

12.    On April 4, 2002, defendants NASSIB BERRO and SALWA BERRO transferred title to their residence at 5903 Steadman, Dearborn, Michigan, in a sale of that property to their son.

13.    On April 4, 2002, defendants NASSIB BERRO and SALWA BERRO received $54,000 as proceeds of the sale representing their equity in the house as a result of payments made on the mortgage.

## Bankruptcy Filing

14.    On April 25, 2002, defendants NASSIB BERRO and SALWA BERRO jointly  filed a voluntary petition for bankruptcy, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division

15.    In that bankruptcy petition, defendants NASSIB BERRO and SALWA BERRO failed to disclose that they had received $54,000 from the sale of the property at 5903 Steadman, Dearborn, Michigan.

16.    On November 12, 2003, defendant NASSIB BERRO advised an individual known to the grand jury about putting assets in the names of third parties before declaring bankruptcy so that creditors could not reach those assets.

17.    On May 24, 2002 , defendant SADEK BERRO attended the bankruptcy